IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

D.C., individually and on behalf of
J.C., an incapacitated adult,

     Plaintiffs,

v.

THE SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA,

     Defendant.

     CASE NO:

_____/

## **COMPLAINT**

COME NOW the plaintiffs, D.C., individually and on behalf of J.C., a minor, by and through the undersigned counsel and sues THE SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA and hereby alleges as follows:

### **PARTIES**

1. The Plaintiff, D.C. ("parent") is an individual, *sui juris*, who resided in Palm Beach County, Florida at all times relevant to this matter. She is the custodial parent, guardian and next of friend of J.C., an incapacitated adult.

2. The Plaintiff, J.C., is currently 18, has been found to be incapacitated and subjected to a plenary guardianship. His mother, D.C., has been appointed his guardian. J.C. resided in Palm Beach County, Florida, and at all times relevant to this matter. J.C. attended a Palm Beach County Public School during the 2022-2023 school year.

3. The Defendant, SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA, ("Board" or "District") is a corporate and governmental agency duly empowered by

the constitution and statutes of the state of Florida to administer, manage, and operate the Palm Beach County Public Schools ("PBCPS.")

4. The district receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

## JURISDICTION AND VENUE

5. Jurisdiction for this action vests pursuant to 42 U.S.C. § 12132 for claims brought under the Americans with Disabilities Act of 1990; and for violations of J.C.'s civil rights; and the District Court's pendent jurisdiction over the state claims alleged, which arise out of the same operative facts and circumstances.

6. This Court's jurisdiction is based upon 28 U.S.C. § 1331.

7. Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that the school and Board reside in the judicial district and the cause of action accrued in the judicial district.

## NATURE OF CASE

8. This is an action commenced under Title II of the Americans with Disabilities Act, ("ADA") 42 U.S.C. § 12132; and their implementing federal and state regulations.

9. In this action, Plaintiffs suffered damages and now seek declaratory and injunctive relief as well as damages.

## GENERAL ALLEGATIONS

1. J.C. , who is now 18, attended a Palm Beach Public School during the 2022-2023 school year.

2. J.C. has autism spectrum disorder (ASD), an intellectual disability (IND), and a language impairment (LI). He also has a diagnosis of Angelman's Syndrome[1] and epilepsy.

3. J.C. communication disabilities.

4. J.C. is minimally verbal and primarily communicates with an augmentative and alternative communication (AAC) high-tech speech generating device. He also uses gestures, vocalizations and nonverbal methods to communicate and interact with the world around him.

5. AAC includes communication devices, systems, strategies, and tools that replace natural speech. AAC helps those with impairments in the production or comprehension of spoken or written language to supplement or replace speech or writing to communicate when one cannot rely on oral speech.

6. The first "A" in AAC stands for Augmentative Communication or adding to or supplementing speech (e.g. sign language, symbol boards, keyboards). This can make a message clearer to the listener and enable a person with limited speech the opportunity to effectively communicate across all settings.

7. The second "A" in AAC stands for Alternative Communication. This means having other ways to communicate that do not involve spoken speech, when someone is not able to use their natural voice to speak and needs a different way to communicate.

8. J.C. is still learning receptive and expressive language, while at the same time increasing his use of AAC devices, systems and strategies to communicate more completely and effectively.

9. J.C.'s receptive language (understanding input from others) is stronger than his expressive language (effective output to express to others).

10. The Defendant has recognized J.C. as being a student who has a disability.

11. J.C.'s primary mode of communication is with the use of his AAC device.

12. J.C. primarily utilizes the "ProLoQuo2Go" application on an iPad.

13. This is a symbol based AAC program, and the iPad is a high-tech speech generating device.

14. The district failed to use this application and the iPad as a means of effectively communicating with J.C. throughout the school day.

15. J.C. has failed to make any meaningful progress in his academic; social/emotional, communication, behavior and independent living skills.

16. From August 2022 through the Summer of 2023, the district failed to provide effective communication partners for J.C. through the school day. His three assigned ESE teachers and General Education teacher(s), along with the services providers and therapists, along with the assigned paraprofessional and backup paraprofessional(s) were unable to utilize J.C.'s device to communicate with him or instruct him during the school day.

17. Without effective communication partners to teach J.C. to learn to increase his expressive communication, and effectively communicate, J.C. will further regress. He has been allowed to use grunts and pointing rather than communicating with his device.

One clear example is when J.C. is allowed to use gestures and grunts when asking to use the restroom. He was allowed to point or grab his private area, which has been accepted by school staff as modified sign language, instead of the more acceptable source of effectively communicating by using his speech generating device. This could have devastating consequences for a nonverbal teenager in public if the public misunderstands the gesture and grunting as something sexual or inappropriate instead of a way to say he needs to use the restroom. Instead, J.C. should be taught how to communicate that he needs to use the restroom with his AAC device. This will allow him to effectively and appropriately communicate with his teachers, peers and the public.

18. From August 2022 through the Summer of 2023, school staff assigned to work with J.C. did not appear to know or utilize the necessary AAC strategies to model for the student and did not use or provide J.C. with the necessary level of aided language input.[2]

19. It has already been established that J.C. cannot meaningfully access his education without the use of his AAC speech generated device with the Proloqu2Go application. If the school staff are not utilizing the device or the application with fidelity, then the student does not have the ability to access his education. If the staff are not modeling or utilizing aided language input, then the staff are not utilizing the device and its application with fidelity. In order for J.C. to have meaningful access to his environment

---

[2] Aided language input is a communication strategy that requires a communication partner to teach symbol meaning and model symbolic communication by pairing speech with graphic symbols.

and his education, the staff must be trained and must implement the use of AAC with consistency, reliability, predictability and fidelity.

20. The district failed to have staff trained to use J.C.'s AAC device.

21. The district failed to communicate with the student using his primary means/mode of communication.

22. The district failed to effectively communicate with the student; and failed to teach the student to effectively communicate.

23. When the plaintiffs attempted to reenroll in the same public school for the 2023-2024 school year, the district refused to accept the student. As a direct result, J.C. was required to start in a new school for the 2023-2024 school year.

24. Plaintiffs have engaged Langer Law, P.A. to represent them and are obligated to pay a reasonable fee for their services.

## COUNT I

### VIOLATION OF TITLE II OF THE AMERICAN DISABILITIES ACT
### 42 U.S.C. § 12131, *et seq.*

25. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 24 of the Complaint as if fully set forth herein.

26. Plaintiffs further allege that the actions of the Defendant are discriminatory.

27. The Defendants are recipients of federal financial assistance and are therefore subject to Title II of the ADA.

28. J.C. has a disability that substantially limits his daily life activities.

29. J.C. has communication disabilities.

30. The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1)&(2).

31. The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.'

32. The ADA further requires that schools communicate effectively with people who have communication disabilities like J.C.

33. J.C.'s parents made reasonable requests to ensure that staff were trained and that J.C.'s communication device was utilized in the school setting. These requests were delayed and denied.

34. The actions of refusing to train staff, and accommodate the student is discrimination per say. Refusing to utilize the communication device and J.C.'s selected means of communication is the same as putting tape on his mouth. He has no means to express himself or communicate with others.

35. The request to utilize an AAC device is not a fundamental alteration of the school program and is not a undue financial burden to the school district.

36. The district is excluding and/or discriminating against J.C. solely on the basis of his disability. As a result of the district's actions and inaction, J.C. lost an entire school year of education, independent functioning, communication and social emotional skills.

37. As such, the Plaintiffs are entitled to damages for the injuries as a result of these discriminatory actions.

38. Plaintiffs are also entitled to recover reasonable attorneys' fees and costs incurred in bringing this action pursuant to 42 U.S.C. section 12205.

**WHEREFORE**, D.C., individually and on behalf of J.C., respectfully request this Court to declare the actions of the Defendants violate the Americans with Disabilities Act, issue a permanent injunction enjoining the Defendant from discriminating against students with disabilities, award damages to J.C. for the missed educational opportunities and progress he should have made during the 2022-2023 school year and award Plaintiffs' attorneys' fees, costs and expenses incurred in this matter and for such further relief as the court deems just and equitable.

## COUNT II
## RETALIATION

39. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 24 of the Complaint as if fully set forth herein.

40. Retaliation is prohibited under the ADA. 42 U.S. Code § 12203.

41. The definition of retaliation is found in the implementing regulations of the Americans with Disabilities Act at 28 CFR 36.206.

42. Plaintiffs allege that the Defendant's hostility towards them is directly related to their advocacy to protect J.C.

43. A prima facie case for retaliation consists of four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an action adverse to the plaintiff; and 4) the protected activity and the adverse action are causally connected.

44. In this case, advocating for J.C. is a protected action. The Defendant was aware of the family's advocacy and in response the Defendant refused to accept J.C. for the 2023-2024 school year.

45. Plaintiffs have suffered severe emotional distress due to Defendants' retaliatory acts.

WHEREFORE, D.C., individually and on behalf of J.C., demand judgment against the Defendant for damages, together with their attorney's fees and costs, and such further relief as the court deems just and equitable.

## JURY DEMAND

**A TRIAL BY JURY IS DEMANDED FOR ALL ISSUES TRIABLE AS OF RIGHT BY A JURY.**

Dated this 8th day of April, 2024.

        **LANGER LAW, P.A**

        By:__s/ Stephanie Langer_____
            Stephanie Langer, Esq.
            Florida Bar No: 149720
            Langer Law, P.A.
            15715 S. Dixie Highway, Suite 205
            Palmetto Bay, Florida 33157
            T: (305) 570-0940 / F: (305) 204-9602
            Email: slanger@langerlawpa.com
                    admin@langerlawpa.com
                 *Attorneys for the Plaintiffs*